IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ALMEDIA HENDERSON                                        PLAINTIFF

            v.            Civil No. 06-1015

MICHAEL J. ASTRUE[1], COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION                           DEFENDANT

## MEMORANDUM OPINION

Now on this 20th day of March, 2007, the captioned matter, wherein plaintiff claims that defendant erred in denying her a closed period of disability and Social Security disability insurance benefits, comes on for review.

1.   Plaintiff, Almedia Henderson ("Henderson") went through the tenth grade in school, obtained a GED, and received her certification as a nurse's aide.   Her past relevant work experience was as a home manager training aide and home health aide.   She applied for a closed period of disability, from September 1, 2002, through February 1, 2004, alleging disability due to back and shoulder pain, right knee impairment, headaches, and hypertension.   At the time of the administrative hearing on her application for benefits, she was 61 years old.

2.   The Administrative Law Judge ("ALJ") conducted the standard sequential evaluation, finding that Henderson had not been gainfully employed during the closed period, and that she had

---

[1]Michael J. Astrue became the Social Security Commissioner on February 12, 2007, and pursuant to F.R.C.P. 25(d(1), he has been substituted for Jo Anne B. Barnhart as defendant in this suit.

a severe impairment within the meaning of the Social Security Act, but that she did not have an impairment or combination of impairments which meets or exceeds those listed in Appendix 1 to Subpart P, Regulations No. 4.

The ALJ discredited Henderson's complaints of disabling pain, finding them inconsistent with the evidence as a whole. He noted that during the relevant period, Henderson was able to babysit her grandchildren, shop, drive, and walk for errands and exercise, and that she used no prescription medication. He also noted that Henderson testified that she would have been working during the closed period if she had not been laid off, and that her doctors did not restrict her from work activities.

The ALJ found that Henderson had the residual functional capacity ("RFC") to lift 50 pounds occasionally and 25 pounds frequently; sit 6 hours in an 8-hour day; and stand or walk 6 hours in an 8-hour day.

The ALJ understood Henderson's past relevant work to consist of providing instructions to patients, with no lifting involved, and concluded that she could have performed that work during the closed period. He, therefore, rendered an unfavorable decision on Henderson's claim on May 20, 2005.

3. The Appeals Council denied Henderson's request for administrative review, making the decision of the ALJ the final agency decision, and Henderson filed the pending Complaint seeking

judicial review.

4.    Henderson alleges that the ALJ's decision is not supported by substantial evidence on the record as a whole, for the following reasons:

*    The ALJ's pain/credibility analysis was infirm because Henderson was taking pain medications; her doctors were not asked for an opinion on her work capacity; her daily activities were not inconsistent with her complaints of pain; and because of her condition she had only been working 15 hours a week when she was laid off.

*    The only medical evidence to support the ALJ's residual functional capacity assessment came from non-treating, non-examining physicians.

*    The ALJ failed to fully ascertain the requirements of Henderson's past relevant work.

5.    The Court's role upon review is to determine whether the decision of the Commissioner is supported by substantial evidence on the record as a whole. **Ramirez v. Barnhart**, **292 F.3d 576 (8th Cir. 2002)**. Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support a conclusion. *Id*. The Court must consider not only the evidence supporting the ALJ's decision, but also that which fairly detracts from it, and must affirm if the record -- viewed as a whole -- contains substantial evidence to support the decision. *Id*. The

Court may not reverse simply because the record also contains substantial evidence that would have supported a contrary decision. **Haley v. Massanari, 258 F.3d 742 (8th Cir. 2001).**

The burden rests on Henderson to prove that she had a disability during the alleged closed period that prevented her from engaging in any substantial gainful activity. **Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001).**

6.   The Administrative Record reflects the following facts relevant to Henderson's contentions:

* Henderson worked as a nurse's aide until she was laid off, in August, 2002, because a former worker returned and wanted her job back.  Henderson was not happy to be laid off, and testified that it was "kind of hurtful."

* When she was laid off, Henderson's back and shoulder were bothering her, and had been for quite some time, but she had continued working because she had children she was helping to put through college.  She did not look for work to replace her job, but she would have kept working if she had not been laid off.

* After Henderson was laid off, she babysat for her daughter's three children -, an infant, a preschooler, and a grade schooler - while her daughter was in school.

* On September 18, 2002, Henderson completed a Disability Report stating that her back, left shoulder, and knees

-4-

limited her ability to work, because they hurt when she lifted, vacuumed, or sat too long.  She said she became unable to work because of these conditions as of August 15, 2002, and that she had cut back her hours to 5 hours a day, three days a week.  She indicated that she was working at the time she completed the report.  She was taking Tylenol, Aleve, and ibuprofen at the time.

*   On September 19, 2002, Henderson applied for Social Security benefits.  That day, Henderson also completed a Work Activity Report showing that she was working 15 hours a week, and that she had left her previous 40-hour-a-week job when she was laid off in August, 2002.

*   On September 20, 2002, Henderson saw Dr. Carlton Newsome for an initial evaluation of back pain which she had had for "about one month."  No particular abnormalities were noted on the exam, and no treatment was prescribed.

*   On October 30, 2002, Henderson completed a Disability Supplemental Interview Outline.  She indicated that she could do laundry and dishes, change the sheets, drive, walk for exercise or errands, and shop for groceries, but vacuuming put a strain on her back and raking leaves hurt her shoulder "very bad."  At that time she was working three days a week, for a total of nine to fifteen hours a week.  She had pain in her lower back

and her shoulder.  She was taking Celebrex[2], Tylenol and Aleve.

* On December 4, 2002, Henderson had x-rays of her lumbar spine.  These revealed "[m]inimal degenerative changes of the lumbar spine with Grade 1 spondylolisthesis[3] of L4-L5, presumably degenerative in nature.  No spondylolysis[4] is seen."  X-rays were also taken of her left shoulder.  They were normal.

* On February 3, 2003, Henderson completed a Disability Supplemental Interview Outline.  She indicated that she was working three hours a day, five days a week, at "Home Health," although she "hurt daily," and if she worked a long period, "I have to walk bending over."  She indicated that she vacuumed at this job.  She further indicated that her back pain interfered with "lifting a patient on my job August 2002."

* On February 5, 2003, Henderson completed a Work History Report.  She stated that she was at that time working as a nurse aide. Her job involved vacuuming, mopping, giving baths, and "home maker chores."  She lifted 50

---

[2]A non-steroidal anti-inflammatory prescription medication used to treat -- among other things -- osteoarthritis and ankylosing spondylitis.  Physicians' Desk Reference, 2007 Ed.

[3]"Forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or on the sacrum."  Stedman's Medical Dictionary, 28th Ed.

[4]"Degeneration or deficient development of a portion of the vertebra."  Stedman's Medical Dictionary, 28th Ed.

pounds occasionally and less than ten pounds frequently.

* On March 31, 2003, a physician[5] filed out a form entitled General Physical Examination on Henderson. At that time Henderson reported using Aleve, Tylenol, and Celebrex as needed. Her range of motion was normal in all respects except for forward elevation of her left shoulder. The diagnosis was "[o]stearthritis of lumbar spine, shoulder & knee. Mild to moderate in nature." In response to a question asking the physician to assess the severity of Henderson's limitations on a scale of mild-moderate-severe, the physician noted "[patient] probably has mod[erate] limitations in lifting [more than] 10 lbs. Also [patient] has great difficulty raising [left] arm above head but strength is intact. Overall only mild limitations."

* On April 2, 2003, Dr. Robert Forward read an x-ray of Henderson's knee to show "[e]vidence of mild to moderate osteoarthritis of the right knee."

* On April 9, 2003, Dr. Jerry Thomas filled out a Functional Capacity Assessment form regarding Henderson. Dr. Thomas indicated that Henderson could occasionally lift 50 pounds, and frequently lift 25 pounds. She could stand or walk six hours in an eight-hour day, and

---

[5] The physician's signature on this document is illegible.

sit for the same length of time.  She was limited in her ability to do overhead work with her left arm.

\*   In February, 2005, Henderson went back to work at a job essentially like the one she was laid off from, only the work was harder, because she was working with disabled people who were less independent and needed more care than those she had previously been working with.

7.  Henderson first contends that the ALJ did not conduct a proper pain/credibility analysis under **Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)**(subsequent history omitted), which requires consideration of a claimant's daily activities; the duration, frequency and intensity of pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions.

The Court does not agree.  The ALJ considered Henderson's daily activities (babysitting, shopping, housework, cooking), pain medication (mostly over the counter), and functional restrictions (none), as they bore on her testimony about the duration, frequency and intensity of her pain.  He also considered her testimony that she would not have quit her job, had she not been laid off, and that she returned to similar but more difficult work.

While it is true that taking only over the counter pain medications does not necessarily discredit complaints of disabling

-8-

pain, the fact that a claimant does not regularly require prescription medication can create reasonable doubt about the extent of pain. **Curran-Kicksey v. Barnhart**, **315 F.3d 964, 969 (8th Cir. 2003)**. The Court notes that Henderson also took Celebrex, a prescription medication used to treat osteoarthritis, but does not find that this changes the analysis.

It is also true that a claimant need not be helpless or bedridden to be found disabled, but looking after three young children calls for more physical ability than the "light housework and visiting with friends" which "provides little or no support for the finding that a claimant can perform full-time competitive work." **Hogg v. Shalala**, **45 F.3d 276, 278 (8th Cir. 1995)**. In addition, Henderson testified that she would not have quit her job in August, 2002, and the documents she filled out in pursuit of benefits indicate that she continued to work at similar jobs for 15 hours a week at least into February, 2003. Thus, Henderson's level of activity could create reasonable doubt about the extent of her pain.

Finally, the lack of any functional restrictions placed upon Henderson by her doctors could reasonably create such doubt. Given the totality of the circumstances, the Court finds no error in the ALJ's finding that Henderson's complaints of disabling pain were not completely credible. The ALJ properly acknowledged and considered the factors set out in **Polaski v. Heckler**, **739 F.2d**

**1320 (8th Cir. 1984),** and found Henderson's level of activity inconsistent with complaints of disabling pain. There is substantial evidence to support this finding.

8. Henderson also contends that the only medical evidence to support the ALJ's residual functional capacity assessment came from a non-treating, non-examining physician. While that is true, the ALJ specifically discounted the agency assessment, relying instead on Henderson's own testimony that she would not have left her job if she had not been laid off, and that she returned to a more difficult job. It is appropriate to determine residual functional capacity on the basis of "all the relevant evidence, including . . . an individual's own description of his limitations." **<u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000).** The Court finds no error in the ALJ's functional capacity assessment, especially when considering that Henderson was able to return to a more difficult job without having had any treatment for the conditions she describes as disabling.

9. Finally, Henderson contends that the ALJ failed to fully ascertain the requirements of Henderson's past relevant work. Given that Henderson would not have left that past work if she had not been laid off, continued to do similar work on a part-time basis while babysitting her three grandchildren, and ultimately returned to more difficult work of the same type without having received any treatment for her alleged disabling conditions, the

Court fails to see how any shortcoming in this area could be prejudicial to Henderson.

10.  Having reviewed the entire record in this matter, and fully considered the arguments of the parties, the Court concludes that there is substantial evidence to support the Commissioner's decision.  It will, therefore, be affirmed by Judgment entered concurrently herewith.

**IT IS SO ORDERED.**

                              **/s/ Jimm Larry Hendren**
                             **JIMM LARRY HENDREN**
                             **UNITED STATES DISTRICT JUDGE**